**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **LAGARY DIXSON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 3:11-CV-00543-K (BF)** |
| | § | |
| **COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration

("Commissioner") denying the claim of LaGary Dixson ("Plaintiff") for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court considered

Plaintiff's Brief, filed on September 6, 2011, Defendant's Brief, filed on October 4, 2011, and

Plaintiff's Reply Brief, filed on October 18, 2011. The Court also reviewed the record in connection

with the pleadings. For the following reasons, the Court recommends that the final decision of the

Commissioner be **AFFIRMED**.

**Background**[1]

**Procedural History**

Plaintiff filed an application for Title XVI benefits on June 25, 2007, alleging disability due

to panic attacks, depression, high blood pressure, and gout. (Tr. 9, 195-97, 213.) This application

was initially denied by the Commissioner, and again upon reconsideration. (Tr. 133-46.) Plaintiff

requested a hearing, which was held on April 1, 2009 in front of an Administrative Law Judge

---

[1] The following background facts are taken from the transcript of the administrative
proceedings, which is designated as "Tr".

("ALJ").  (Tr. 66-110, 147-48.)  At the hearing, Plaintiff, who was represented by counsel, and a

Vocational Expert ("VE") testified.  (Tr. 66-110.)  The ALJ issued an unfavorable decision on

November 20, 2009, denying Plaintiff's application for disability.  (Tr. 6-17.)  Plaintiff filed a timely

request with the Appeals Council to review the ALJ's decision.  (Tr. 29.)  The Appeals Council

declined Plaintiff's request for review on January 25, 2011.  (Tr. 1-5).  Thus, the ALJ's decision

became the final decision of the Commissioner, from which Plaintiff now seeks judicial review

pursuant to 42 U.S.C. § 405(g).

**Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on January 8, 1958.  (Tr. 16.)  He was 49 years old on the date his

application was filed, and 51 years old at the time of the hearing.  (*Id.*)  Plaintiff has a high school

education, some college, and is able to communicate in English.  (*Id.*)  Plaintiff scored in the

borderline IQ range on the Wechsler Adult Intelligence Scale-III ("WAIS-III") exam administered

on March 21, 2007.  (Tr. 334.)  However, the psychologist who administered the exam noted that

Plaintiff's scores were somewhat compromised by emotional interference, and under more ideal

testing conditions, Plaintiff would have scored well within the average range.  (Tr. 335.)

Plaintiff ran an auto repair business for about six years before his fiancé committed suicide

in October 2000.  (Tr. 79.)  In 2007, Plaintiff worked very briefly as a cook at a nursing home.  (Tr.

72.)  In his findings, the ALJ found that Plaintiff has no past relevant work.  (Tr. 16.)

**Plaintiff's Medical Evidence**

Plaintiff submitted treatment records from Dallas Metrocare Services ("Metrocare").  (Tr.

281-89, 364-93, 469-92.)  Plaintiff's first visit to Metrocare was on June 20, 2006.  (Tr. 282.)

Plaintiff reported having panic attacks for the last six months, getting nervous, feeling like he was

2

losing control, feeling depressed, a lack of motivation, and a decrease in sleep. (Tr. 283.) He denied suicidal thoughts or attempts. (*Id.*) Plaintiff told the clinician that he started using alcohol at age 18 and he now drinks on the weekends, about eighteen beers and the liquor brandy. (*Id.*) The clinician noted that Plaintiff was adequately groomed; his behavior was cooperative; his speech was normal; he had no sign of psychotic features; no delusions; his thought processes were organized; he was alert and oriented; and his insight, judgment, and impulse control were fair. (*Id.*) Plaintiff was assessed with depressive symptoms and panic attacks, and it was noted that alcohol could be a contributing factor. (Tr. 284.) Plaintiff was assigned a Global Assessment of Functioning ("GAF") score of 49.[2] (*Id.*) Plaintiff was prescribed Paxil. (*Id.*) On July 7, 2006, Plaintiff was already feeling better as he indicated to the clinician that he was sleeping better, his panic attacks were better, and his depression was better. (*See* Tr. 305.)

Progress notes from Metrocare dated January 3, 2007, indicated that Plaintiff was inconsistent with keeping his scheduled doctor's appointments and taking his medications as prescribed. (Tr. 318.) Plaintiff returned to Metrocare on February 2, 2007. (Tr. 286.) In addition to Paxil, Plaintiff was also given prescriptions for Klonopin, for anxiety, and Revia, to curb alcohol cravings. (*Id.*) On May 29, 2007, a treatment plan was completed by Metrocare for Plaintiff. (Tr. 287-89.) Plaintiff was diagnosed with Major Depressive Disorder, without psychotic features, recurrent and mild; and alcohol dependence. (Tr. 287.) Plaintiff reported panic attacks, low attention span, trouble sleeping, hearing things, feeling sad a lot, and a decrease in weight. (*Id.*) The doctor noted Plaintiff had no

---

[2] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM). A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. *See id.*

psychiatric hospitalizations within the last two years, and little to no functional impairment in his ability to interact with others, maintain hygiene, and complete functions of daily living.  (*Id.*)

Plaintiff was referred by Metrocare to the Department of Assistive and Rehabilitative Services.  A psychological examination was performed by Dr. Russell Mitchell on March 21, 2007.  (Tr. 332-38.)  Plaintiff reported no significant medical problems except hypertension.  (Tr. 333.)  He stated he was in good health and had no significant physical limitations.  (*Id.*)  He reported a moderate use of alcohol and denied any alcohol or drug abuse.  (*Id.*)  Regarding his mental health, Plaintiff stated he has had symptoms of anhedonia, loss of motivation, feelings of guilt, problems remaining focused, and periodic panic attacks.  (*Id.*)  These symptoms were brought about by the passing of his wife in 2000.  Plaintiff told the doctor that he has not had a panic attack in quite some time and he is somewhat less depressed.  (*Id.*)  He stated that he still has a lack of motivation and morbid preoccupations.  (*Id.*)  Plaintiff said that the panic attacks have not occurred as long as he remains compliant with his medications.  (Tr. 337.)  The doctor diagnosed Plaintiff with Major Depressive Disorder, recurrent and moderate; and Panic Disorder without Agoraphobia.  (*Id*.)  He was assigned a GAF score of 51-60.[3]  (*Id.*)  The doctor opined that Plaintiff may have such issues, relating to employment, as maintaining stamina during the work day, maintaining concentration, staying organized and meeting deadlines, handling stress and emotions, and attendance issues.  (Tr. 337-38.)

Plaintiff submitted medical records from the Parkland Memorial Hospital ("Parkland") which dated from February 2006 through January 2009.  (*See* Tr. 394-412, 441-49.)  The records indicate

---

[3]  A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM).

4

that Plaintiff periodically visited Parkland with complaints of hypertension, headaches, back pain, and symptoms from gout. (*Id.*) Plaintiff's gout symptoms included pain, swelling, and edema, usually in his feet or toes. (*Id.*) On one occasion, the doctor noted that Plaintiff was using crutches to ambulate. (Tr. 407.) Plaintiff's visits to Parkland were typically for his physical ailments, but on January 29, 2009, he complained of trouble sleeping and anxiety attacks. (Tr. 462.) He reported anxiety attacks for the past two months. (*Id.*) Plaintiff's assessment was hypertension, anxiety attacks, and gouty arthritis. (Tr. 463.)

At the request of the Commissioner, a state agency psychologist, Dr. Mark Boulos, completed a Psychiatric Review Technique and a Mental Residual Functional Capacity ("RFC") Assessment on September 13, 2007. (*See* Tr. 413-26, 435-38.) In the Psychiatric Review Technique, Dr. Boulos found Plaintiff to have 12.04 Affective Disorders (major depressive disorder, recurrent, mild); 12.06 Anxiety-Related Disorders (panic disorder without agoraphobia); and 12.09 Substance Addiction Disorders (alcohol dependence). (Tr. 413-21.) Regarding Plaintiff's functional limitations, the doctor found him to have mild restrictions of daily living activities and difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 423.) He noted that Plaintiff has a history of depression and alleged panic attacks and has been dependent on alcohol for quite some time. (Tr. 425.) The doctor also made a notation that Plaintiff has trouble staying focused and puts off doing things. (*Id.*) He continued by writing that Plaintiff can handle changes in his daily routine, he gets along well with others, he is able to ride the bus or train, he has a driver's license, he can leave his home alone, and he works on the yard, car and does laundry. (*Id.*) Dr. Boulos noted that the alleged limitations were not supported by the evidence in the record. (*Id.*)

For the mental RFC assessment, Dr. Boulos opined Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; his ability to maintain concentration and attention for extended periods; his ability to interact appropriately with the general public; and his ability to respond appropriately to changes in the work setting. (Tr. 435-36.) The doctor found that Plaintiff was not markedly limited in any of the listed mental activities. (*See id.*) Instead, he found that Plaintiff was not significantly limited in all other categories, including his ability to understand, remember, and carry out simple instructions; his ability to ask simple questions and make simple work decisions; his ability to maintain regular attendance and be punctual to work; his ability to work closely to others with no distractions; his ability to sustain an ordinary routine with no special supervision; his ability to complete a normal workday and workweek and perform at a consistent pace; and his ability to get along with co-workers and accept instructions from supervisors. (*Id.*) Dr. Boulos noted that Plaintiff "can understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work setting." (Tr. 437.)

Also at the request of the Commissioner, a state agency medical consultant, Dr. Yvonne Post, completed a Physical RFC Assessment on September 13, 2007. (*See* Tr. 427-34.) The doctor diagnosed Plaintiff with gout and hypertension. (Tr. 427.) She opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 428.) Dr. Post found that Plaintiff was unlimited in his pushing or pulling abilities, and found no postural limitations, manipulative limitations, or any other limitations related to his physical impairments. (Tr. 428-31.) The doctor noted that Plaintiff has a history of alcohol dependence, he goes to the hospital when he runs out of

his medications, and he has gout flare ups occasionally because he continues to consume alcohol, not because of any neurological deficits. (Tr. 428.) Dr. Post also made a notation that the alleged limitations were not wholly supported by the evidence in the record. (Tr. 432.)

On December 3, 2008, Plaintiff presented to Metrocare to refill his medications. (Tr. 481-83.) He reported that he was doing so-so, he had some anxiety relief on Klonopin, and some benefit with Paxil. (Tr. 482-83.) The clinician noted that Plaintiff has been on this combination of medications with benefit over the last eight years. (Tr. 482.) He was assigned a GAF score of 41.[4] Plaintiff visited Metrocare again on February 12, 2009 to refill his medications. (Tr. 477-80.) He reported that he was doing so-so, that he has had no panic attacks since his last visit, and that he has been driving over bridges without problems or panic attacks. (Tr. 479.) He stated that he was still having nightmares, but his focus and concentration have improved. (*Id.*)

On March 12, 2009, another treatment plan was completed by Metrocare for Plaintiff. (Tr. 470-76.) He was diagnosed with Major Depressive Disorder without psychotic features, recurrent, mild; alcohol dependence; and malignant essential hypertension. (Tr. 470.) He was assigned a GAF score of 49. Plaintiff reported trouble with focusing and completing projects, and that his mind is always running. (*Id.*) He attributes these symptoms to the death of his fiancé. (*Id.*) The clinician noted that Plaintiff has a clear ability to care for himself, he has no suicidal or homicidal thoughts, and he has minor to no functional impairments in his daily living activities, responsibilities, and interacting with others. (*Id.*) Nonetheless, Plaintiff stated that he was still having trouble sleeping, thoughts of death or dead people, heart palpitations and anxiety, and flashbacks to the suicide of his

---

[4] A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM).

fiancé.  (Tr. 476.)  However, he also reported his mood was pretty good, he listens to music, he plays dominoes, his appetite is good, he's looking forward to working, and he went to the movie theater for the first time in a few years.  (Tr. 475-76.)

**Plaintiff's Testimony at the Hearing**

Plaintiff was represented by counsel and testified on his own behalf at the hearing held on April 1, 2009.  (Tr. 66-110.)  Plaintiff testified that he worked very briefly as a cook in a nursing home in 2007, but he had trouble keeping up with the work because of the swelling in his left foot. (Tr. 72.)  He stated that is the only work he has done since filing his application in June of 2007.  (*Id.*) Plaintiff testified that he has pain in his left big toe and pain in his left leg, which doctors have attributed to gout or arthritis.  (Tr. 72-73.)  He stated that he is currently taking medication which relieves the pain somewhat, but he has an uncomfortable pain when he walks for a distance.  (Tr. 73-74.)  Plaintiff testified that he used to go as long as three years without a gout flare-up, but more recently, he has flare-ups every couple of months or so.  (Tr. 75-77.)  He stated that when he has a flare-up, it usually lasts four to five days and he has to stay off his feet and take his medication.  (Tr. 77.)  Plaintiff stated that he doesn't take his medication on a regular basis, only when he feels a flare-up coming on.  (*Id.*)  Plaintiff also testified regarding his hypertension and stated that his blood pressure was pretty good.  (Tr. 78.)  He said that he takes a daily medication, and his blood pressure generally stays around 140/84.  (*Id.*)  Plaintiff also testified to having lower back pain and not being able to lift heavy items.  (Tr. 78.)  Plaintiff stated that these were his only physical ailments which would prevent him from working.

Regarding Plaintiff's mental health, he stated that he began having anxiety and panic attacks after the passing of his fiancé in October of 2000.  (Tr. 79.)  Plaintiff testified that he has trouble

focusing and his mind wanders frequently. (Tr. 81.) He said that he prefers to stay away from people because he thinks they may be judging him. (*Id.*) On a typical day, Plaintiff stated that he wakes up at 7 or 8 a.m., drinks coffee, walks outside if it's a nice day, listens to music or watches the news, cleans up the house, and sometimes he cooks. (Tr. 82.) He testified that he gets along well with his daughter and other family members, and with the general public. (Tr. 83-84.) Plaintiff testified to having severe headaches due to his high blood pressure. (Tr. 90.) He also stated that he has trouble sleeping, but no anger issues. (Tr. 91.) Plaintiff testified that he has panic attacks a couple of times a month where his heart beats fast and he gets nervous. (Tr. 92-93.) He stated that he is currently taking medication for the panic attacks and the medicine is helping a lot. (Tr. 93.) When asked by his attorney if panic attacks would prevent him from working, he replied that he didn't know and that he didn't have panic attacks that much. (Tr. 93-94.)

Plaintiff stated that he owned an auto repair business for six years and a rental hall, which didn't bring in any income. (Tr. 79, 84.) He testified to being unemployed for many years, but always looking for work. (Tr. 84-86.) He also spoke of a few prior jobs that required manual labor and he was unable to perform the work because of the pain in his back, leg and foot. (Tr. 87-90.) The ALJ questioned Plaintiff regarding the discrepancy in the number of children he has claimed. (*See* Tr. 97.) At the hearing, he told the ALJ that he only had one child, but he told the clinicians at Metrocare that he had five children. (*Id.*) Plaintiff then replied that he had one child and the other four children belonged to the lady with whom he lived. (Tr. 98.) The ALJ told Plaintiff that the Metrocare records showed he had five children from three different relationships. (*Id.*) Plaintiff then retracted his story and stated that he may have a child in Louisiana, and the lady he lives with has three children. (Tr. 98-99.) Regarding his alcohol use, Plaintiff testified that he doesn't have an

alcohol problem and that he doesn't drink alcohol every weekend.  (Tr. 99-100.)  He said that when

he does drink alcohol, he drinks about a six-pack of beer.  (Tr. 100.)  When questioned regarding his

diagnosis of alcohol dependence, Plaintiff stated that the doctors were wrong.  (Tr. 101-02.)  Plaintiff

also testified that the medical records reflecting that he drinks eighteen beers on the weekends are

inaccurate.  (Tr. 99.)  Finally, Plaintiff testified that he has been volunteering at a radio station as a

DJ for the past ten years.  (Tr. 102.)  He stated that he volunteers one day a week for three hours, and

he is successful at the work.  (*Id.*)  Plaintiff then agreed with the radio station supervisor's comments

that he is positive, rational, calm, and takes criticism well.  (Tr. 105-06.)

**The Hearing**

A VE, Ms. Suzette Skinner, also testified at the hearing regarding jobs in the national

economy.  She stated that Plaintiff has no past work experience that qualifies as substantial

gainful activity.  (Tr. 107.)  The ALJ posed a hypothetical to the VE: assume someone who can

occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and walk for

six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and no limitations

on pushing, pulling, or operation of hands.  (Tr. 107.)  He then asked the VE if that hypothetical

person, with the same age, education, and experience as Plaintiff, would be able to perform any

jobs in the national economy.  (Tr. 107.)  The VE identified the following representative

occupations: "cook, short order," DOT[5] #313.374-014; "assembler, small products," DOT

#706.684-022; and "assembler, plumbing hardware," DOT #706.684-086.  (Tr. 107-08.)  The ALJ

then asked the VE if any of those three jobs would be eliminated if the hypothetical person was

---

[5]  The Dictionary of Occupational Titles ("DOT") is a standardized volume of job
definitions that the Social Security Administration relies on at steps 4 and 5 of its five-step
disability determination process.  SSR 00-4p, 2000 WL 1898704 at *2.

also limited to simple routine tasks.  (Tr. 108.)  The VE responded that the short order cook

position would be eliminated.  (*Id.*)  The ALJ asked the VE if her testimony conflicted with the

DOT, and the VE replied "no".  (*Id.*)

**The Decision**

The ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation

process.[6]  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since his alleged onset date of June 25, 2007.  (Tr. 11.)  At step two, the ALJ found that the

medical evidence established that Plaintiff had the following severe impairments: gout, low back

pain, hypertension, and an affective disorder.  (*Id.*)  At step three, the ALJ determined that Plaintiff

did not have an impairment or combination of impairments that meets or medically equals one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC.  He determined that he

could perform light work because he could occasionally lift and carry twenty pounds, frequently lift

and carry ten pounds, stand and walk for six hours in an eight-hour workday, and sit for six hours in

an eight-hour workday.[7]  (Tr. 12.)  Plaintiff was further limited to simple routine tasks.  (*Id.*)

---

[6] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3)
Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the
impairment prevent her from performing her past relevant work? (5) Does the impairment
prevent her from doing any other work?  20 C.F.R. §§ 404.1520, 416.920.

[7] Light work is defined as work that involves lifting no more than twenty pounds at a
time with frequent lifting or carrying up to ten pounds.  Even though the weight lifted may be
very little, a job in this category requires a good deal of walking or standing, or it involves sitting
most of the time with some pushing and pulling of arm or leg controls.  To be considered capable
of performing a full range of light work, an individual must have the ability to do substantially
all of these abilities.  20 C.F.R. § 416.967.

At step four, the ALJ determined that Plaintiff did not have any past relevant work.  (Tr. 16.)

At step five, the ALJ found, based on the testimony of the VE, that there were jobs that existed in

significant numbers in the national economy that Plaintiff could perform.  (Tr. 16-17.)  Hence, the

ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  (Tr. 17.)

**Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that he is disabled for purposes

of the Social Security Act.  *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995);  *Abshire v.*

*Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act

is "the inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A);

*Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is

disabled.  Those steps are:

1.  An individual who is working and engaging in substantial gainful activity will not
    be found disabled regardless of medical findings.

2.  An individual who does not have a "severe impairment" will not be found to be
    disabled.

3.  An individual who "meets or equals a listed impairment in Appendix 1" of the
    regulations will be considered disabled without consideration of vocational factors.

4.  If an individual is capable of performing the work the individual has done in the past,
    a finding of "not disabled" must be made.

5.  If an individual's impairment precludes him from performing his past work,
    other factors including age, education, past work experience, and residual functional
    capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564.  The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference.  *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g).  Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564.  The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## Issues

1.   Whether the ALJ's RFC determination is supported by substantial evidence.

2.   Whether the ALJ failed to consider Plaintiff's anxiety disorder when making the step 2 severity finding.

## Analysis

**Whether the ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to make a separate finding that Plaintiff could maintain employment.  (Pl.'s Br. at 6-9.)  A person's RFC is his ability to perform physical and mental work activities on a regular and continuing basis notwithstanding limitations from his impairments.  20 CFR § 404.1545.  The ALJ is responsible for determining a claimant's RFC if the claimant is at the ALJ hearing level.  20 CFR § 404.1546(c).  In assessing the claimant's RFC, the ALJ will consider all medical evidence as well as other evidence provided by the claimant.  20 CFR § 404.1545(a)(3).  Here, the ALJ determined Plaintiff's RFC after consideration of all the evidence in the record and found that he could perform light work in that he could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, but must be limited to simple routine tasks.

In the Fifth Circuit, a claimant's ability to maintain employment is incorporated in the RFC determination unless a showing has been made that the claimant's ailment "waxes and wanes" in its manifestation of disabling symptoms.  *See Frank v. Barnhart,* 326 F.3d 618, 619 (5th Cir. 2003); *Perez v. Barnhart,* 415 F.3d 457, 465 (5th Cir. 2005).  The court in *Frank* made it clear that the ALJ does not have a duty in every case to make a separate finding that the claimant can maintain employment.  326 F.3d at 619.  The court explained that ". . . in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time."  *Id.*  The court in *Frank* found that the ALJ did not have a duty to make a separate finding regarding the claimant's ability to maintain employment, but gave an example of evidence that may require such finding.  *Id.*

14

at 619-20.  "For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination."  *Id.* at 619.  Similarly, the court in *Perez* found that the claimant did not make the requisite showing to trigger the necessity of a separate finding by the ALJ of the claimant's ability to maintain employment.  415 F.3d at 465.

In this case, Plaintiff claims that his gout flare-ups are evidence of a condition that "waxes and wanes" and would prevent him from maintaining employment.  (Pl.'s Br. at 7-8.)  In support of his argument, Plaintiff points to his testimony at the hearing that his gout flare-ups occur every couple of months or so, and last four to five days.  (*Id.* at 7.)  Plaintiff also contends that treatment notes confirm his gout flare-ups.  (*Id.*)  At the hearing, Plaintiff did testify to gout flare-ups every couple of months, but Plaintiff's inconsistencies in his testimony at the hearing undermines his credibility.

First, the ALJ pointed out Plaintiff's inconsistent testimony in that he told the ALJ he had one child and he told clinicians at Metrocare that he had five children.  Plaintiff explained to the ALJ that he has one child and the lady he lives with has four children, and that is why he told Metrocare he has five children.  When pressed by the ALJ regarding his statement that he had five children from three different relationships, Plaintiff then retracted his prior statement and said that he has two children and the lady with whom he lives has three children.  Plaintiff's testimony regarding his alcohol use also proved to be untruthful.  Plaintiff denied telling clinicians at Metrocare that he drank eighteen beers on the weekends and said that the records reflecting that statement were inaccurate.  Plaintiff then testified that the doctors were wrong when they diagnosed him with alcohol dependence.  The Court points out that doctors at Metrocare diagnosed Plaintiff with alcohol dependence on multiple occasions, and Dr. Boulos, the state agency psychologist, also diagnosed

Plaintiff with alcohol dependence.  Furthermore, Plaintiff's alcohol use was such a problem that

doctors at Metrocare felt the need to prescribe him Revia, a medication which curbs alcohol cravings.

Plaintiff was clearly untruthful in aspects of his testimony, thus his credibility is somewhat

diminished and the Court cannot rely solely on his statements regarding his gout flare-ups.

Moreover, subjective complaints must be corroborated by objective medical evidence.  *See*

*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

Nonetheless, Plaintiff also argues that treatment notes confirm Plaintiff's gout flare-ups.

(Pl.'s Br. at 7.)  In support of his argument, Plaintiff points to four visits that Plaintiff made to

Parkland over the course of roughly three years, wherein doctors noted Plaintiff's gout symptoms

such as pain, edema, and trouble with ambulation.  (*See id.*)  Plaintiff states that on one occasion, his

gout was so severe that he had to ambulate with crutches.  (*Id.*)  On another occasion, the doctors

noted that he ambulated with a limp.  (*Id.*)  The Court has reviewed these records, and finds that four

visits over the span of three years, wherein on one occasion Plaintiff was ambulating with crutches

and on another occasion Plaintiff was ambulating with a limp, does not nearly suffice to meet the

standard set out in *Frank* to demonstrate a condition that "waxes and wanes".  *See Frank,* 326 F.3d

at 619.  Plaintiff  has failed to demonstrate a physical condition that "waxes and wanes", thus

triggering the ALJ's duty to make a separate finding of sustaining employment.

In addition to a physical condition, Plaintiff also alleges that he has demonstrated a mental

condition that "waxes and wanes".  (Pl.'s Br. at 8.)  Essentially, Plaintiff contends that his testimony

at the hearing and medical records indicate that his anxiety, panic attacks and inability to concentrate

wax and wane.  (*See id.*)  At the hearing, Plaintiff testified that he has trouble focusing and his mind

wanders frequently.  He also testified that his medication is helping a lot with his anxiety and panic

16

attacks.  At first he testified that he has panic attacks a few times a month, and then he testified that he doesn't have panic attacks that much.  Further, he stated that he is rational and calm.  Again, Plaintiff makes inconsistent statements regarding his panic attacks and  the Court cannot rely solely on his testimony regarding their frequency.  Furthermore, Plaintiff testified to having trouble focusing, but he didn't state the frequency or severity of this problem.

Plaintiff also contends that medical records reflect a mental condition that "waxes and wanes".  The Court disagrees.  Plaintiff relies partly on Dr. Mitchell's assessment that Plaintiff may have problems maintaining stamina during the workday and meeting attendance requirements of a job.  (*Id.*)  Plaintiff fails to mention Dr. Mitchell's notes that indicate Plaintiff's statements that he hasn't had a panic attack in quite some time and that his panic attacks don't occur as long as he is compliant with his medications.  Furthermore, the Court points to records from Metrocare which indicate that alcohol could be a contributing factor to Plaintiff's anxiety and depression; Plaintiff has been inconsistent in keeping doctor's appointments and taking his medications as prescribed; Plaintiff's medications, when taken consistently, have provided relief for his anxiety and depression; and Plaintiff has little to no functional impairments in daily living activities.  Additionally, Dr. Boulos noted that Plaintiff has only mild restrictions in daily living activities; *alleged* panic attacks; he is dependent on alcohol; he has trouble focusing, but he also puts off doing things; his alleged limitations are not supported by the evidence in the record; and that Plaintiff was not significantly limited in his ability to complete a normal workday or workweek, his ability to maintain regular attendance and be punctual to work, and his ability to work closely with others and not be distracted.

While the Court finds there is some medical evidence of Plaintiff's inability to concentrate, none of the evidence alleges the severity or frequency with which he has this problem.  Additionally,

Dr. Boulos' assessment does not find him significantly limited in this area, thus there is contradicting evidence as well.  Furthermore, the Court finds that an overwhelming amount of the evidence demonstrates that Plaintiff's anxiety and panic attacks are, for the most part, under control so long as he is compliant with his medications.  An impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability.  *See Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988).  Finally, the medical records are replete with statements regarding Plaintiff's alcohol usage, and the effects that the alcohol use have on his mental impairments.  As the ALJ noted in his findings, Plaintiff's substance use is not disabling; however, Plaintiff's continued use of alcohol despite warnings from his treatment providers further undermines the credibility of his allegations of disabling mental impairments.  (*See* Tr. 15.)  The evidence that Plaintiff has presented to this Court regarding his mental condition does not rise to the level of impairment of a condition that "waxes and wanes".

In sum, the Court finds that Plaintiff has not met the standard required in *Frank* to demonstrate a physical or mental condition that "waxes and wanes".  Therefore, the ALJ was not required to make a separate finding of Plaintiff's ability to sustain work.  The ALJ adequately took into account Plaintiff's ability to maintain employment when he made Plaintiff's RFC determination, and thus, Plaintiff's RFC is supported by substantial evidence.

**Whether the ALJ Failed to Consider Plaintiff's Anxiety Disorder When Making the Step 2 Severity Finding.**

Plaintiff contends that the ALJ used the incorrect standard of severity in his Step 2 determination.  (Pl.'s Br. at 10.)  Plaintiff concedes that the ALJ referenced the *Stone* standard in two

18

places in his decision; however, Plaintiff argues that he must have used the wrong standard because he did not find Plaintiff's anxiety and panic disorder severe.  (*Id.* at 11.)  In the alternative, Plaintiff argues that even if the ALJ applied the right standard of severity, substantial evidence does not support the ALJ's determination.

The Regulations define a severe impairment as that which significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  However, the Fifth Circuit found that a literal application of that definition is inconsistent with the statutory language and legislative history of the Act.  *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985).  In *Stone*, the Fifth Circuit determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101.  Unless the correct standard of severity is used, the claim must be remanded to the Commissioner for reconsideration.  *Id.* at 1106.

The ALJ in this case cited the correct *Stone* standard in the "Applicable Law" section of his decision, and he also referenced *Stone* again in his "Findings of Fact and Conclusions of Law."  (Tr. 9-11.)  Based on review of the record, there is no indication that he failed to apply *Stone* to the facts of Plaintiff's case.  First, the Court notes that Plaintiff was seen by doctors at Metrocare spanning over a period of approximately three years and was never diagnosed with anxiety or panic disorder. Although Plaintiff testified to having panic attacks a few times a month at his hearing, he then later testified that he doesn't have panic attacks that much.  As this Court has already demonstrated, Plaintiff's credibility was undermined through the inconsistencies in his testimony at the hearing. Plaintiff was consistently prescribed Klonopin for anxiety, but, as doctors noted and Plaintiff himself

19

stated, his anxiety and panic attacks improved with the medication.  *See Johnson*, 864 F.2d at 348 (stating that a condition which is controlled by medication is not disabling).  Furthermore, evidence shows  he was able to perform normal activities of daily living, including working on the yard and his car, driving, leaving the house alone, doing laundry, listening to music, playing dominoes, and going to the movies.  (Tr. 425, 475-76, 479.)  On March 12, 2009, he told clinicians at Metrocare that he was looking forward to working.  The Court also notes that Plaintiff was able to hold a voluntary position as a DJ at a radio station for ten years.  Although he only worked one day a week for a few hours, he was successful at the work and was described by his supervisors as being positive, rational, calm, and responsive to criticism.

Plaintiff argues that records in 2009 demonstrate that Plaintiff was still suffering from anxiety and panic attacks.  (Pl.'s Reply Br. at 7.)  To support his argument, Plaintiff points to records from Parkland dated January 29, 2009, which indicate that Plaintiff complained of having anxiety attacks for the past two months.  However, Plaintiff fails to mention records from Metrocare dated December 3, 2008 and February 12, 2009.  On December 3, 2008, Plaintiff presented to Metrocare and reported some anxiety relief with his medication.  Plaintiff's next visit to Metrocare was on February 12, 2009, and he reported that he has had no panic attacks since his last visit and that he is able to drive over bridges without having a panic attack.  These records contradict Plaintiff's statement to the doctor at Parkland regarding his panic attacks.  Substantial evidence supports the ALJ's determination that Plaintiff does not have a severe mental impairment of anxiety and panic disorder.

Plaintiff also appears to make an argument that the ALJ did not properly consider the limitations of Plaintiff's anxiety and panic disorder when formulating Plaintiff's RFC.  (Pl.'s Br. at 9-10.)  However, for the reasons outlined above, the Court finds that the ALJ did consider all the

objective medical evidence and Plaintiff's subjective complaints regarding his anxiety and panic attacks, and thus limited Plaintiff to simple routine tasks.  The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988).  The ALJ's RFC determination is supported by substantial evidence.

<u>**Recommendation**</u>

For the foregoing reasons, the Court recommends that the District Court **AFFIRM** the final decision of the Commissioner and dismiss Plaintiff's Complaint with prejudice.

SO RECOMMENDED, May 2, 2012.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after service.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).